1

2

3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SALMA MERRITT, et al.,<br><br>             Plaintiffs,<br><br>   v.<br><br>CITY OF SUNNYVALE, et al.,<br><br>             Defendants. | Case No.  5:15-cv-02775-EJD<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTIONS TO DISMISS; DENYING AS<br>MOOT DEFENDANTS' MOTION TO<br>REQUIRE PLAINTIFFS TO FURNISH<br>SECURITY FOR COSTS**<br><br>Re: Dkt. Nos. 17, 20, 26 |

United States District Court
Northern District of California

Plaintiffs David Merritt and Salma Merritt (collectively, "Plaintiffs") allege in this action that certain policies promulgated by the city of Sunnyvale and implemented by their homeowners' association are discriminatory and violated their civil rights.  Presently before the court are three matters, including two motions to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and a motion to require Plaintiffs to furnish security for costs pursuant to Civil Local Rule 65.1-1.  Dkt. Nos. 17, 20, 26.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331.[1]  The motions to dismiss are

---

[1]    Although the "short and plain statement" jurisdictional statement required by Federal Rule of Civil Procedure 8 is missing from Plaintiffs' Complaint, it is nonetheless evident that jurisdiction arises under § 1331 because of the causes of action asserted under federal statutes. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808 (1988) (holding that "a district court's federal-question jurisdiction . . . extends over 'only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law'").

Notably, jurisdiction cannot be based on 28 U.S.C. § 1332 because Plaintiffs' allegations reveal the parties are not completely diverse.  Kuntz v. Lamar Corp., 385 F.3d 1177, 1181 (9th Cir. 2004) (holding for diversity jurisdiction to arise, "there must be complete diversity of citizenship between the parties opposed in interest").

unopposed,[2] and for the reasons explained below will be granted.  The motion to furnish security will be denied as moot.

## I.    BACKGROUND

### A.    The Parties

Plaintiffs David Merritt and Salma Merritt are residents of a townhome complex known as the Classis at Fair Oaks (the "Classics").  Compl., Dkt. No. 1, at ¶¶ 1, 2, 17.  They purchased and moved into their home in March, 2006.  Id. at ¶ 27.  The Classics was developed by Mozart Development Company, Inc. ("Mozart") between 2002 and 2005.  Id. at ¶ 17.  The founder and head of Mozart is David Krasowski.  Id.  The Classics is governed by the Classics at Fair Oaks Homeowners' Association (the "HOA"), on which Chetak Gandhi, Wayne Brown, and Ying-Chi Ying (whose real name is Ying-Chi Lee) serve as board members.[3]  Id. at ¶¶ 4-6.

The Classics is located within the city of Sunnyvale.  Hanson Hom was the Director of Community Planning for the city, and John Howe and Rosemarie Zulueta were assistant planners.  Id. at ¶¶ 8, 10, 11.  Trudi Ryan was a city planning officer.  Id. at ¶ 9.[4]

Plaintiffs allege that Salma Merritt "has been designated and repeatedly held to be a person with disabilities" who "on a daily basis requires assistance in some form or another" from David Merritt.  Id. at ¶¶ 15, 16.

---

[2]      Plaintiffs' motions to extend the time to file oppositions to the motions to dismiss (Dkt. Nos. 45, 48) are DENIED.

The court previously granted Plaintiffs a significant extension of time - from November, 2015, to February 2016 - within which to file oppositions to the motions.  Dkt. No. 30.  This period was more than sufficient for Plaintiffs to respond, and though they may argue otherwise, Plaintiffs have not demonstrated compelling good cause for yet another extension of time.

[3]      When not referenced separately, the HOA, Gandhi, Brown, and Ying are referred to as the "Classics Defendants."

[4]      The city of Sunnyvale, Hom, Howe, Zulueta and Ryan will be referred to collectively as the "Sunnyvale Defendants."

Case No.: 5:15-cv-02775-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT
DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR
COSTS

United States District Court
Northern District of California

### B.   Precursor Events to Parking Regulation at the Classics

The allegations in Plaintiffs' Complaint are several and span many years.  To begin, Plaintiffs allege that from January, 2000 through May, 2005, Mozart negotiated with the city of Sunnyvale "to limit the number of parking spaces that would be required for off-street parking within the Classics complex, so as to maximize the number of homes they could build."  Id. at ¶ 18.  Specifically, Plaintiffs allege that Krasowski "was briefed by his CC&Rs[5] agent(s)," who were told by Sunnyvale staff" in 2004 and 2005, that "there was a recurring parking problem" at the Classics because some homeowners were "not using their garage spaces for parking and others making disability accommodations in their garages which prevented car(s) from parking in [the] garage."  Id. at ¶ 20.  Krasowski was also informed by Sunnyvale staff, however, that the city "did not have legal authority to enforce any policy that would authorize Sunnyvale police or employees to inspect and search homes" to determine whether and how a garage was being used due to "privacy and property rights."  Id. at ¶ 21.

Apparently to get around privacy and property rights, Plaintiffs allege that Sunnyvale asked Mozart's agents whether they would authorize the HOA "to prohibit disability accommodations" through the CC&Rs.  Id.  Krasowski authorized the prohibition in or about April 2004, and the following regulation was included in the CC&Rs published in April, 2005: "no garage space may be converted into any use that would prevent its use for parking the number of vehicles the garage was originally designed to contain.  The Board may adopt Rules regulating parking in the Common Area and within the parking spaces described in Section 2.8, including regulations that prohibit occupants from parking in all or part of the parking spaces . . . ."  Id. at ¶¶ 23, 24.  Sunnyvale staff also approved the CC&Rs in April, 2005.  Id. at ¶ 26.

### C.   David Merritt's Petition for Parking Rezoning

From June to July, 2006, David Merritt, who it seems was Secretary of the HOA and Chair

---

[5] "CC&Rs" is a common acronym for the covenants, conditions and restrictions that apply to property governed by a homeowners' association.

3

of the Parking and Driving Committee at that time, circulated a petition among homeowners at the Classics in support of requesting that the city of Sunnyvale rezone a block of East Arques from commercial to residential so that parking would be permitted on the street.  Id. at ¶¶ 30, 31. Thirty-one homeowners signed the petition, and David Merritt presented it at a meeting of the Sunnyvale City Council in July, 2006.  Id. at ¶ 31.  Plaintiffs allege that at the meeting, Howe and other members of the City Council informed them "there was nothing that could be done unless homeowners presented evidence that all garage spaces were being used for cars . . . ."  Id. at ¶ 32. David Merritt assured the city that "all but 2 out of the 54 unit garages were being used for parking household vehicles . . . ."  Id. at ¶ 33.

Plaintiffs allege that in response to the petition, Howe and other council members ordered Hom, Ryan, and Zulueta to "produce an official policy" authorizing a homeowners' association to inspect and search the inside of homes.  Id. at ¶ 34.  A policy was thereafter drafted that included the following language: "The association or property manager could conduct periodic garage inspections (with advance notice) to assure garages are being used for parking."  Id. at ¶ 36.  After additional discussion, the City Council approved the policy, and it was finally published in February, 2008.  Id. at ¶¶ 46, 47.

**D.    The Classics Parking Policies**

A new parking policy for the Classics became effective on July 17, 2008.  Id. at ¶ 53.  The policy required the HOA to appoint a parking commissioner who would, through volunteers, monitor parked cars in the common area and issue notices to homeowners parked for more than three days.  Id. at ¶ 54.  Subsequent violations could result in a $100 fine.  Id.  The new policy excluded "those parking spaces that were situated on owner's property," including Plaintiffs' outside parking space, and also sought to have homeowners pledge to use their garage spaces to park rather than parking in the common area.  Id. at ¶¶ 54, 56.

Plaintiffs allege that because the HOA spoke with homeowners face-to-face, a parking commissioner was never appointed and violation notices were never issued.  Id. at ¶ 55.  They also

Case No.: 5:15-cv-02775-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT
DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR
COSTS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    allege the new policy "did not interfere with any owner who had to make accommodations within

2    or outside their home for a disabled person." Id. at ¶ 58.

3        David Merritt was elected President of the HOA in August, 2006, and started a newsletter

4    to report community activities at the Classics. Id. at ¶ 38. In 2009, David Merritt called for new

5    HOA elections and stepped down as President. Id. at ¶ 60.

6        After the election, David Merritt believed the new HOA officeholders "were not interested

7    in proactively doing things to maintain and improve the community," so he began to publish

8    newsletter articles that "reported their inactivity and criticized their reluctance to be proactive."

9    Id. at ¶ 61. From 2009 through 2010, Ying, Brown and Gandhi criticized David Merritt for

10   publishing the newsletter and attempted to coerce him to stop. Id. at ¶ 65.

11       Because David Merritt did not stop publishing the newsletter, Plaintiffs allege that Ying,

12   Brown and Gandhi decided to produce a new parking policy which "would not acknowledge

13   [Plaintiffs'] any right to make disability accommodations within their garage and force them to

14   park two vehicles in [their] garage as punishment for his criticisms of them." Id. at ¶ 68.

15   Plaintiffs state they had previously arranged disability accommodations for Salma Merritt, such

16   that she would either park outside their home or park only her car in their two-car garage. Id. at ¶

17   89.

18       Eventually, on March 25, 2010, Ying, Brown and Gandhi decided to change the parking

19   policy to allow for in-home inspections and fines of $100 for homeowners' vehicles parked

20   outside their garages. Id. at ¶ 70. Plaintiffs allege that Gandhi and Brown spoke with Sunnyvale

21   staff in advance of implementing the new policy, and were told that searches by the HOA were

22   permissible under the 2008 city policy drafted in response to David Merritt's rezoning petition.

23   Id. at ¶¶ 72-74.

24       On or about August, 2010, Ying, Brown and Gandhi promulgated yet another parking

25   policy for the Classics, which "mandated that all vehicles found not parked in garages would be

26   towed at [the] owners' expense" unless the owners "waived their right to privacy" by permitting

27

Case No.: 5:15-cv-02775-EJD
28   ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT
     DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR
     COSTS

an inspection of their homes.  <u>Id</u>. at ¶ 94.  Plaintiffs objected to this policy and, after several

discussions, were "forced to divulge" that Salma Merritt was disabled because Plaintiffs were told

their parking permit would otherwise be denied.  <u>Id</u>. at ¶ 111.  Ying and Brown then searched

Plaintiffs' garage on September 4, 2010.  <u>Id</u>. at ¶ 127.  Despite the search, Plaintiffs and their

guests continued to use the common area parking spaces "and maintained their disability

accommodations pursuant to their disability needs without further interference."  <u>Id</u>. at ¶ 129.

Plaintiffs allege that, in November, 2010, Ying, Brown and Gandhi made a "superficial

change" to the parking policy and called for the entire permitting process to be redone in a

continued effort to cancel Plaintiffs' parking permit.  <u>Id</u>. at ¶¶ 130, 131.  Then, on January 25,

2011, the HOA held a board meeting during which Ying, Brown and Gandhi pressured David

Merritt to divulge Salma Merritt's medical information by threatening to tow Plaintiffs' vehicles.

<u>Id</u>. at ¶ 140.  At the same meeting, the HOA also approved parking permits for other homeowners,

none of whom claimed a disability, but Ying, Brown and Gandhi stated they would never

recognize Salma Merritt's disability and would vote to reject parking accommodations for

Plaintiffs.  <u>Id</u>.

### E.    The State Court Action

On March 2, 2011, Plaintiffs filed a complaint in Santa Clara County Superior Court

against the Classics Defendants for conspiracy, invasion of privacy, and disability discrimination

under the Americans with Disabilities Act ("ADA"), the California Disabled Persons Act, and

Unruh Civil Rights Act, California Civil Code § 51 (the "State Court Action").  Classics Defs.'

Req. for Judicial Notice ("RJN"), Dkt. No. 18, at Ex. 1.[6]  There, Plaintiffs alleged that Gandhi,

Brown and Ying conspired to change the HOA's parking policy at the Classics to "take away"

Plaintiffs' right to park their second vehicle in a space outside of Plaintiffs' garage.  <u>Id</u>.

---

[6] The Classics Defendants' Request for Judicial Notice is GRANTED in its entirety.  Fed. R. Evid.
201(b); <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006)
(holding the court "may take judicial notice of court filings and other matters of public record").

Case No.: 5:15-cv-02775-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT
DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR
COSTS

United States District Court
Northern District of California

1    The Classics Defendants eventually moved for summary judgment or summary

2    adjudication, which motion the state court granted in a written order filed on February 13, 2013.

3    Id. at Ex. 2.  The court found the Classics Defendants had established a complete defense to the

4    disability discrimination cause of action because "the condominium complex and its parking area

5    are not 'public accommodations' within the definition" of the ADA, California Disabled Persons

6    Act, the Unruh Civil Rights Act "and Gov. Code § 4450 and Health & Safety Code § 19955."  Id.

7    The court also determined this finding was dispositive of the other invasion of privacy and

8    conspiracy causes of action, and entered judgment in favor of the Classics Defendants.  Id. at Exs.

9    2, 3.

10       **F.    The Instant Case**

11    Plaintiffs initiated this case on June 19, 2015.  They allege the following causes of action

12    against different combinations of defendants: (1) Retaliation for Petition for Redress and Free

13    Speech in violation of 42 U.S.C. § 1983; (2) Invasion of Privacy in violation of § 1983; (3)

14    Conspiracy to Invade Privacy and Public Disclosure of Private Facts in violation of several

15    California statutes; (4) Disability Discrimination in violation of § 1983 and 42 U.S.C. § 3604 et

16    seq.; and (5) Disability Discrimination in violation of the Unruh Civil Rights Act.  The instant

17    motions followed.

18  **II.    LEGAL STANDARD**

19       **A.    Federal Rule of Civil Procedure 12(b)(6)**

20    Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

21    specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

22    it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).

23    The factual allegations "must be enough to raise a right to relief above the speculative level" such

24    that the claim "is plausible on its face."  Id. at 556-57.  A complaint that falls short of the Rule

25    8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R.

26    Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

7

28

1  cognizable legal theory or sufficient facts to support a cognizable legal theory." <u>Mendiondo v.</u>

2  <u>Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008).

3        When deciding whether to grant a motion to dismiss, the court must generally accept as

4  true all "well-pleaded factual allegations." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664 (2009).  The court

5  must also construe the alleged facts in the light most favorable to the plaintiff.  <u>Love v. United</u>

6  <u>States</u>, 915 F.2d 1242, 1245 (9th Cir. 1988).  However, "courts are not bound to accept as true a

7  legal conclusion couched as a factual allegation." <u>Iqbal</u>, 556 U.S. at 678.

8        Also, the court generally does not consider any material beyond the pleadings for a Rule

9  12(b)(6) analysis.  <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n. 19

10  (9th Cir. 1990).  Exceptions to this rule include material submitted as part of the complaint or

11  relied upon in the complaint, and material subject to judicial notice.  <u>See Lee v. City of Los</u>

12  <u>Angeles</u>, 250 F.3d 668, 688-69 (9th Cir. 2001).

13      **B.**   **Pro Se Pleadings**

14        Where, as here, the pleading at issue is filed by a plaintiff proceeding pro se, it must be

15  construed liberally.  <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000).  In doing so, the court

16  "need not give a plaintiff the benefit of every conceivable doubt" but "is required only to draw

17  every reasonable or warranted factual inference in the plaintiff's favor." <u>McKinney v. De Bord</u>,

18  507 F.2d 501, 504 (9th Cir. 1974).  The court "should use common sense in interpreting the

19  frequently diffuse pleadings of pro se complainants." <u>Id</u>.  A pro se complaint should not be

20  dismissed unless the court finds it "beyond doubt that the plaintiff can prove no set of facts in

21  support of his claim which would entitle him to relief." <u>Haines v. Kerner</u>, 404 U.S. 519, 521

22  (1972).

23  **III.**   **DISCUSSION**

24      **A.**   **The Classics Defendants' Motion to Dismiss**

25        The Classics Defendants argue that, in light of the State Court Action, all claims asserted

26  against them in the Complaint must be dismissed because they are barred by the res judicata

27                                    8

   Case No.: <u>5:15-cv-02775-EJD</u>

28  ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT
   DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR
   COSTS

*United States District Court*
*Northern District of California*

doctrine.  On the record presented, the court agrees that Plaintiffs are now precluded from bringing the claims in federal court.

Res judicata precludes parties and their privies from relitigating issues that were or could have been raised in a prior action.  Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).  Although the doctrine is generally considered an affirmative defense, it can be properly raised by a motion to dismiss when "the defense raises no disputed issues of fact."  Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984).

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  Consequently, "[w]hether a prior state court judgment precludes relitigation of an identical claim in federal court depends on the preclusion rules of the state."  Gupta v. Thai Airways Int'l, LTD., 487 F.3d 759, 765 (9th Cir. 2007).

In California, "[r]es judicata applies if (1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding."  Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles, 126 Cal. App. 4th 1180, 1202 (2004).  It is also true in California that "[r]es judicata bars the litigation not only of issues that were actually litigated but also issues that could have been litigated."  Id.

**i.    The Summary Judgment Order is Final and On the Merits**

Applying the first element of res judicata, it is evident the summary judgment order entered in the State Court Action was one "on the merits" with regard to the causes of action asserted in the underlying complaint.  See Lucas v. Cnty. of Los Angeles, 47 Cal. App. 4th 277, 286-87 (1996) (holding that a summary judgment order is on the merits for res judicata purposes unless granted on a procedural or technical basis); see also Columbus Line, Inc. v. Gray Line Sight-Seeing Cos. Associated, Inc., 120 Cal. App. 3d 622, 629 (1981) ("The summary judgment

9

United States District Court
Northern District of California

United States District Court
Northern District of California

1  on the complaint is a judgment on the merits . . . .").

2       Similarly, the finality of the summary judgment order cannot be disputed.  "[I]n California

3  the rule is that the finality required to invoke the preclusive bar of res judicata is not achieved until

4  an appeal from the trial court judgment has been exhausted or the time to appeal has expired."

5  Franklin & Franklin v. 7-Eleven Owners for Fair Franchising, 85 Cal. App. 4th 1168, 1174 (2000).

6  Here, the order was filed in superior court on February 13, 2013, and judgment was entered on

7  April 9, 2013.[7]  Plaintiffs attempted to appeal from the summary judgment order, but the

8  California Court of Appeal denied their "request to file new litigation related to the appeal of the

9  order granting respondents' motion for summary judgment."  Classics Defs.' RJN, at Ex. 4.  The

10  California Supreme Court subsequently denied review of the Court of Appeal's decision, and there

11  is no indication Plaintiffs pursued the matter further.  Id. at Ex. 5.  Plaintiffs have therefore

12  exhausted any rights to appeal from the summary judgment order.

13       Because the summary judgment order filed in the State Court Action is both final and on

14  the merits, the court finds the first element of the res judicata doctrine is satisfied.

15       **ii.    The Present Proceeding is on the Same Cause as the State Court Action**

16       Under California law, "[t]wo proceedings are on the same cause of action if they are based

17  on the same 'primary right.'"  Fed'n of Hillside & Canyon Ass'ns, 126 Cal. App. 4th at 1202.

18  This theory:

19              provides that a 'cause of action' is comprised of a 'primary right' of
20              the plaintiff, a corresponding 'primary duty' of the defendant, and a
              wrongful act by the defendant constituting a breach of that duty.
21              The most salient characteristic of a primary right is that it is
              indivisible: the violation of a single primary right gives rise to but a
22              single cause of action.  A pleading that states the violation of one
              primary right in two causes of action contravenes the rule against

23
_____

24  [7] On its own motion, the court takes judicial notice of the docket in Santa Clara Superior Court
    Case Number 1-11-CV195455, available online at http://cmportal.scscourt.org/Portal, because its
25  contents "can be accurately and readily determined from sources whose accuracy cannot
    reasonably be questioned."  Fed. R. Evid. 201(b), (c); Harris v. Cnty. of Orange, 682 F.3d 1126,
26  1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record . . .
    including documents on file in federal or state courts.").

27                                                  10
    Case No.: 5:15-cv-02775-EJD
28  ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT
    DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR
    COSTS

1

'splitting' a cause of action.

2

As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered.

3

Crowley v. Katleman, 8 Cal. 4th 666, 681 (1994) (internal citations omitted).

4

In addition, the primary right theory is distinguishable from the legal theory on which

5

liability for an injury is premised, as well as from the form of recovery sought.  Id. at 681-82.

6

"'Even where there are multiple legal theories upon which recovery might be predicated, one

7

injury gives rise to only one claim for relief.'"  Id. (quoting Slater v. Blackwood, 15 Cal. 3d 791,

8

795 (1975)).  Also, "'[t]he violation of one primary right constitutes a single cause of action,

9

though it may entitle the injured party to many forms of relief, and the relief is not to be

10

confounded with the cause of action, one not being determinative of the other.'"  Id. at 682

11

(quoting Wulfjen v. Dolton, 24 Cal. 2d 891, 895-96 (1944)).

12

Here, a comparison of the complaints filed in this action and the State Court Action reveals

13

that the "primary rights" Plaintiffs sought to vindicate in both cases are the same; in each,

14

Plaintiffs raise the rights to be free from invasions of property and privacy, disability

15

discrimination, and retaliation for speech.  Though Plaintiffs invoke § 1983 in this case as the

16

legal basis for some cause of action, this distinction makes no difference.  Migra, 465 U.S. at 81

17

(holding that "issues actually litigated in a state-court proceeding are entitled to the same

18

preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where

19

the judgment was rendered").  Accordingly, the court finds this action is "on the same cause" as

20

the State Court Action such that the second element of the res judicata doctrine is satisfied.

21

### iii.    The Parties in this Action are the Same as those in the State Court Action

22

For the final element, the court must determine whether this action involves parties from

23

the State Court Action who were "'directly interested in the subject matter, and had a right to

24

make defense, or to control the proceeding, and to appeal from the judgment.'"  DKN Holdings

25

LLC v. Faerber, 61 Cal. 4th 813, 825-26 (2015) (quoting Bernhard v. Bank of America Nat'l Trust

26

& Sav. Ass'n, 19 Cal. 2d 807, 811 (1942)).  It does.  This case involves the same two plaintiffs as

27

11

28

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR COSTS

United States District Court
Northern District of California

1    the State Court Action, as well as each of the four Classics Defendants.

2         **iv.**     **Conclusion**

3         Because the State Court Action involved the same primary rights, the same parties, and

4    resulted in a final judgment on the merits, the claims asserted against the Classics Defendants in

5    this case are barred by the doctrine of res judicata. Accordingly, the Classics Defendants' motion

6    to dismiss will be granted, and the claims against them will be dismissed without leave to amend

7    because allowing for amendment under these circumstances would be futile. Hartmann v. Cal.

8    Dep't of Corr. & Rehab., 707 F.3d 1114, 1129-30 (9th Cir. 2013) ("A district court may deny

9    leave to amend when amendment would be futile."); Davis v. Cnty. of Maui, 454 Fed. Appx. 582,

10    583 (9th Cir. 2011) (finding amendment futile when claims are barred by res judicata).

11        **B.**     **The Sunnyvale Defendants' Motion to Dismiss**

12         In their own motion to dismiss, the Sunnyvale Defendants argue that Plaintiffs' causes of

13    action against them are untimely under the applicable statute of limitations. They are correct.

14         A statute of limitations defense may be raised by a motion to dismiss "[i]f the running of

15    the statute is apparent on the face of the complaint." Jablon v. Dean Witter & Co., 614 F.2d 677,

16    682 (9th Cir. 1980). Such a motion "can be granted only if the assertions of the complaint, read

17    with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Id.

18         The statute of limitations for a § 1983 claim "is the personal injury statute of limitations of

19    the state in which the cause of action arose." Alameda Books, Inc. v. City of Los Angeles, 631

20    F.3d 1031, 1041 (9th Cir. 2011). In California, the statute of limitations for personal injury claims

21    is two years. Cal. Civ. Proc. Code § 335.1. The limitations period for a federal civil rights claim

22    begins to run from the date the claim accrues. See Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir.

23    2001). "[U]nder federal law, a claim accrues when the plaintiff knows or has reason to know of

24    the injury which is the basis of the action." Lukovsky v. City & Cnty. of San Francisco, 535 F.3d

25    1044, 1048 (9th Cir. 2008).

26         Here, the factual allegations underlying Plaintiffs' federal claims against the Sunnyvale

12

27    Case No.: 5:15-cv-02775-EJD

28    ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT
DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR
COSTS

*United States District Court*
*Northern District of California*

1    Defendants all relate to events that occurred between 2008 and 2012. For example, for the first

2    and second causes of action asserted under § 1983, Plaintiffs allege the Sunnyvale Defendants

3    retaliated against them and violated their privacy in 2008 by "developing, enforcing and

4    maintaining a set of policies" as punishment for their rezoning petition. Compl., at ¶¶ 196, 208.

5    They further allege that these policies were established from at least 2005 to 2009, and

6    implemented and then enforced from 2009 to 2012. Id. at ¶¶ 202, 212. Similarly, for the fourth

7    cause of action asserting disability discrimination under §§ 1983 and 3604, Plaintiffs allege the

8    Sunnyvale Defendants enacted a purportedly discriminatory policy from July, 2006 to 2008. Id. at

9    ¶ 236.

10          Furthermore, it is notable that before the State Court Action was resolved, Plaintiffs

11   attempted to add claims against three of the Sunnyvale Defendants that were nearly identical to

12   those asserted in this case. On December 26, 2012, Plaintiffs filed in state court a "Motion for

13   Leave to File First Amended and Supplemental Complaint to Correct Mistakes, Relate Back and

14   Make Supplemental Pleading Thereto," in which Plaintiffs stated they had "just become aware for

15   the first time, that Defendants Ghandhi [sic], Brown and Lee had been in communication with

16   City of Sunnyvale staff from 2010 to 2012 regarding their making of the Classics parking policy

17   which authorizes them to search home of owners without search warrants." Sunnyvale Defs.'

18   RJN, Dkt. No. 27, at Ex. 3.[8] Plaintiffs submitted with the motion a "Verified First Amended

19   Complaint" containing the same basic facts they allege here: that the Sunnyvale Defendants

20   developed a policy in 2008 that permitted the HOA to search homes. Id. at Ex. 4.

21          Considering the current allegations as well as the documents from the State Court Action,

22   the court concludes that Plaintiffs' federal claims accrued no later than December 26, 2012, since

23   by then Plaintiffs must have known of their purported injuries. Consequently, any action based on

24   those injuries should have been commenced within the next two years, or no later than December

25

26   [8] Like that of the Classics Defendants, the Sunnyvale Defendants' Request for Judicial Notice is
     also GRANTED. Fed. R. Evid. 201(b); Reyn's Pasta Bella, 442 F.3d at 746 n.6.

27
     Case No.: 5:15-cv-02775-EJD
28   ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT
     DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR
     COSTS

1   26, 2014.  See Cal. Civ. Proc. Code § 335.1.  Since Plaintiffs did not file the Complaint in this

2   case until nearly six months later - on June 19, 2015 - their federal claims against the Sunnyvale

3   Defendants are time-barred unless an exception to the statute of limitations applies.

4          But one does not.  Although Plaintiffs' repeatedly suggest in the Complaint that the

5   Sunnyvale Defendants developed, enacted and enforced the policies until 2015 (see, e.g., Compl.,

6   at ¶¶ 151, 152), this allegation does not support application of the continuing violations doctrine.

7          "The continuing violation theory applies to § 1983 actions."  Knox, 260 F.3d at 1013.  "To

8   invoke the continuing violations doctrine, [a plaintiff] must show 'a series of related acts, one or

9   more of which falls within the limitations period, or the maintenance of a discriminatory system

10  both before and during [that] period.'"  Gutowsky v. Cnty. of Placer, 108 F.3d 256, 259 (9th Cir.

11  1997).  If the "heart of plaintiffs' complaint" does not stem from a policy "but rather from the

12  individualized decisions that resulted from implementation of a policy," the individualized

13  decisions are "best characterized as discrete acts, rather than as a pattern or practice of

14  discrimination."  Cherosky v. Henderson, 330 F.3d 1243, 1247 (9th Cir. 2003).  Moreover, the

15  "mere continuing impact from past violations is not actionable."  Knox, 260 F.3d at 1013 (internal

16  quotations omitted).

17         As already explained, Plaintiffs have not alleged a series of related acts, some of which fall

18  within the limitations period; all of the discrete acts attributed to the Sunnyvale Defendants in the

19  Complaint occurred prior to 2012.  In addition, though they mention an ongoing policy or practice,

20  the "heart" of Plaintiffs' allegations do not stem from the Sunnyvale Defendants' alleged policy,

21  but from the individualized decisions that were purportedly made based on that policy.  Plaintiffs

22  may believe they are still experiencing an impact from these decisions, but such impact does not

23  transform stale claims into actionable ones.  For these reasons, the court finds the continuing

24  violations doctrine does not assist Plaintiffs in rendering their claims timely.

25         Nor does a liberal reading of the allegations reveal a basis for equitable tolling.

26  California's law on equitable tolling is applied to Plaintiffs' civil rights claims.  Canatella v. Van

27                                              14

Case No.: 5:15-cv-02775-EJD
28  ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT
    DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR
    COSTS

1   De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007).  Three conditions must therefore be met to toll the

2   statute of limitations: "(1) defendant must have had timely notice of the claim; (2) defendant must

3   not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's

4   conduct must have been reasonable and in good faith."  Bacon v. City of Los Angeles, 843 F.2d

5   372, 374 (9th Cir. 1998).  Stated another way, the element requiring reasonable and good faith

6   conduct requires that the plaintiff "'had at all times proceeded in a diligent manner.'"  Wood v.

7   Elling Corp., 20 Cal. 3d 353, 361 (1977) (quoting Bollinger v. Nat'l Fire Ins. Co., 25 Cal. 2d 399,

8   406 (1944)).

9       Here, both the Complaint and the documents submitted from the State Court Action make

10  plain that Plaintiffs did not diligently pursue claims against the Sunnyvale Defendants.  After the

11  state court denied the motion to amend their Complaint on February 1, 2013, Plaintiffs attempted

12  to appeal from that decision.  Classics Defs.' RJN, at Ex. 4.  But given their designation as

13  vexatious litigants, the California Court of Appeal dismissed the action on August 2, 2013,

14  because Plaintiffs did obtain requisite advance permission to initiate the appeal.  Id.  This case was

15  not filed until approximately two years after the Court of Appeal's decision, which conduct cannot

16  be described as diligent pursuit.  On these facts, the court finds that Plaintiffs' conduct was not

17  reasonable and in good faith, and for that reason they would not be entitled to equitable tolling.

18      Because it is apparent from the face of the Complaint that Plaintiffs' federal claims against

19  the Sunnyvale Defendants are barred by the statute of limitations without exception, the motion to

20  dismiss will be granted.  The dismissal of the federal claims will be without leave to amend

21  because, as with those asserted against the Classics Defendants, the court finds that amendment

22  would be futile.  Hartmann, 707 F.3d at 1129-30 (9th Cir. 2013); see Deutsch v. Turner Corp., 324

23  F.3d 692, 718 (9th Cir. 2003).

24      **C.    Claims Against Mozart**

25       Mozart has not appeared in this action, and Plaintiffs did not file a certificate

26  demonstrating that Mozart was served with process.  In any event, the federal claims against

27                                          15

28  ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT
    DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR
    COSTS

United States District Court
Northern District of California

1    Mozart would also be barred by the statute of limitations for the same reasons explained above,

2    since Plaintiffs sought to amend their state court complaint to also add claims against Mozart.

3    Sunnyvale Defs.' RJN, at Exs. 3, 4.  As such, Plaintiffs were aware of the claims no later than

4    December 26, 2012.  The court will therefore sua sponte dismiss the federal claims asserted

5    against Mozart without leave to amend.  See Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th

6    Cir. 1987) ("A trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6) . . . . Such

7    a dismissal may be made without notice where the claimant cannot possibly win relief.").

8         **D.    Remaining State Law Claims**

9         What remains are Plaintiffs' third and fifth claims to the extent they are asserted against

10   the Sunnyvale Defendants and Mozart.  These claims are based solely in state law.

11        The jurisdiction of federal courts is limited, and is only properly exercised over those cases

12   raising federal questions or involving parties with diverse citizenship.  Exxon Mobil Corp. v.

13   Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  "[O]nce a court has original jurisdiction over

14   some claims in the action, it may exercise supplemental jurisdiction over additional claims that are

15   part of the same case or controversy."  Id.  However, a district court may properly decline to

16   exercise supplemental jurisdiction over state-law claims if such claims "substantially

17   predominate[] over the claim or claims over which the district court has original jurisdiction" or if

18   the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).

19        Since the court has determined that all federal claims will be dismissed without leave to

20   amend, the court declines to exercise supplemental jurisdiction over the remaining state law claims

21   against the Sunnyvale Defendants and Mozart.  These claims will be dismissed without prejudice.

22   See 28 U.S.C. § 1367(c)(3); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir.

23   1997) (en banc).

24   **IV.    ORDER**

25        Based on the foregoing:

26        1.    The Classics Defendants' Motion to Dismiss (Dkt. No. 17) is GRANTED.  All

27                                                    16

United States District Court
Northern District of California

1   claims asserted against the Classics Defendants are DISMISSED WITHOUT LEAVE TO

2   AMEND.

3       2.      The Sunnyvale Defendants' Motion to Dismiss (Dkt. No. 26) is GRANTED, such

4   that the first, second and fourth claims asserted in the Complaint are DISMISSED WITHOUT

5   LEAVE TO AMEND.  All other claims asserted against the Sunnyvale Defendants are

6   DISMISSED WITHOUT PREJUDICE.

7       3.      The first, second and fourth claims, as asserted against Mozart, are DISMISSED

8   WITHOUT LEAVE TO AMEND.  All other claims asserted against Mozart are DISMISSED

9   WITHOUT PREJUDICE.

10      4.      The Motion to Require Plaintiffs to Furnish Security (Dkt. No. 20) is DENIED AS

11  MOOT.

12      Since this decision represents a complete resolution of this action, judgment will be

13  entered in favor of Defendants and the Clerk shall close this file.

14

15      **IT IS SO ORDERED.**

16  Dated: September 16, 2016

17  _____

18  EDWARD J. DAVILA
    United States District Judge

19

20

21

22

23

24

25

26

27                                           17
28  ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING AS MOOT
    DEFENDANTS' MOTION TO REQUIRE PLAINTIFFS TO FURNISH SECURITY FOR
    COSTS

*United States District Court*
*Northern District of California*